In the Matter of the Objections to the Original Certificates of Nomination by the SOCIAL DEMOCRATIC PARTY, Respondent, of Candidates to Be Voted for at the Election of November 8, 1904.

### JOHN S. MCEWAN, Appellant.

1. ELECTIONS — MEANING OF WORDS "ANY CITIZEN" IN SECTION 56 OF ELECTION LAW. In construing the provision of section 56 of the Election Law (L. 1896, ch. 909, as amd. by L. 1898, ch. 335, and L. 1901, ch. 654), that where a dispute as to the political party or other name designated in a certificate of nomination, filed pursuant to that section, or section 57 of the Election Law, has been determined by the officer with whom the certificate is filed, the Supreme Court, or any justice thereof within the judicial district, or any county judge within his county, shall have summary jurisdiction upon the complaint of "any citizen" to review the determination and acts of such officer, and to make such order in the premises as justice may require, the term "any citizen" must be understood as referring to any citizen who has instituted the proceeding by filing objections to the certificate.

2. PROCEEDING TO REVIEW DETERMINATION OF SECRETARY OF STATE AS TO USE OF PARTY NAME NOT AVAILABE TO CITIZEN WHO FAILS TO OBJECT. Where objections have been made to a party name used in a certificate of nomination filed with the secretary of state, the objections overruled, and an order obtained from a justice of the Supreme Court, by the person who made the objections, requiring the secretary of state to show cause before him at a time therein named, why his determination should not be reviewed and a new determination be made, another justice of the Supreme Court has no jurisdiction to grant, upon the application of a person who has made no objections to the certificate, another order requiring the secretary of state to show cause before him, upon a date earlier than that fixed in the first order, why his determination should not be reviewed, and a final order made by the latter judge, upon the return of his order, sustaining the decision of the secretary of state and overruling the objections made to the certificate of nomination, is irregular and void.

3. THE NAME "SOCIAL DEMOCRATIC PARTY" IS SUBSTANTIALLY THE SAME AS "DEMOCRATIC PARTY," AND THE USE THEREOF IS PROHIBITED BY SECTION 56 OF THE ELECTION LAW. Under section 56 of the Election Law any political party is prohibited from selecting "the same or substantially the same name" that has been previously adopted by another party, and where the local or state branch of "The Socialist Party," refusing to adopt that name, by which it is known throughout the United States, and which had been adopted by its national convention in 1900, made nominations for the general election of 1904 under the name of "The Social Democratic Party," and filed a certificate thereof with the secretary of state, it thereby adopted a name substantially the same as that of the Democratic party, adding thereto the word "Social" only; therefore, in view of the purpose and intent of the statute, and in the absence of a national party maintaining that name, the name "The Social Democratic Party" is unauthorized, and should be amended by conforming it to that of the national party, of which the local party is a branch.

*Matter of Social Democratic Party*, 105 App. Div. 243, reversed.

(Argued June 1, 1905; decided October 3, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 16, 1905, which affirmed an order of Special Term denying an application of the appellant herein for a review of the determination of the secretary of state overruling objections to the original certificate of nomination by the Social Democratic party of candidates to be voted for at the election of November 8, 1904.

The facts, so far as material, are stated in the opinion.

*David B. Hill* and *Neile F. Towner* for appellant. The order of Mr. Justice HOWARD was made without jurisdiction. (L. 1896, ch. 909, § 56; *Matter of Mitchell*, 81 Hun, 401; *Matter of Emmet*, 150 N. Y. 538; *Freethy* v. *Freethy*, 42 Barb. 641; *Schultz* v. *Schultz*, 89 N. Y. 644; *Abbe* v. *Abbe*, 22 App. Div. 483; *People* v. *Butler*, 3 Cow. 347; *Moore* v. *Settle*, 56 Am. Rep. 889; *Dixon* v. *W. U. Tel. Co.*, 68 Fed. Rep. 634; *Tea* v. *U. S.*, 22 Fed. Cas. 253; *The City of Salem*, 10 Fed. Rep. 843; *U. S.* v. *Palmer*, 3 Wheat. 610.) The McEwan appeal was duly and regularly taken in accordance with the statute and was entitled to be decided by Mr. Justice BETTS on its merits and should not have been denied simply because the O'Neil appeal had been entertained by Mr. Justice HOWARD and the objections to the certificates of nomination had been overruled by him. (L. 1896, ch. 909, § 56.) The use of the word "Democratic" as a portion of the party name "Social Democratic Party," in the certificates of nomination in question, was illegal and against the spirit and intent of the Election Law. (*Matter of Carr*, 94 App. Div. 493; *Matter of Smith*, 41 Misc. Rep. 501; *Crawford* v. *Laus*, 29 Misc. Rep. 248; *Gaines & Co.* v. *Leslie*, 25 Misc. Rep. 20; *McLaughlin* v. *Singer*, 33 App. Div. 185; *T. H. P. Co.* v. *Tuerk*, 92 Hun, 65; *De Youngs* v. *Jung*, 7 Misc. Rep. 56; *Vulcan* v. *Myers*, 139 N. Y. 364; *Schendel* v. *Silver*, 63 Hun, 330; *Lockwood* v. *Bostwick*, 2 Daly, 521.)

*Morris Hillquit* for respondent. The Social Democratic party in 1904 was an organized political party of the state of New York, and its rights in the elections of 1904 were to be measured by the provisions of section 56 of the Election Law and not by those of section 57. (L. 1896, ch. 909, § 56.) The name "Social Democratic Party" is not the same nor substantially the same name as "Democratic Party," nor is the use of the said name by the Social Democratic party calculated to mislead Democratic or independent voters. (*Matter of Greene*, 9 App. Div. 223; 150 N. Y. 566.) The proceed-

ing which resulted in the order of Mr. Justice Howard herein was regular.   (L. 1896, ch. 909, § 56.)

Haight, J.   On the 5th day of October, 1904, there was filed in the office of the secretary of state a certificate of nomination by the Social Democratic party, so called, of candidates for presidential electors, for governor and for other state officers, to be voted for at the general election to be held November 8th, 1904.   On the same day John S. McEwan, a citizen of the United States and of the state of New York, residing in the city of Albany and a duly qualified elector, filed objections to said certificate with the secretary of state, in which he objected to the use of the word " Democratic " as part of the party name in such certificate.   Thereupon a hearing was had by the secretary of-state and the objection of McEwan was overruled.   Immediately thereafter and upon the same day McEwan applied to Mr. Justice Betts for an order to show cause why the proceedings before the secretary of state should not be reviewed, and thereupon an order to show cause was made by such justice, returnable before him on the 22d day of October, 1904.   Meanwhile one James O'Neil, who had filed no objection whatever to the certificate of nomination before the secretary of state, obtained from Justice Cochrane an order to show cause why the proceedings before the secretary of state should not be reviewed, returnable before Justice Howard on the 20th day of October, 1904.   Upon the return of such order to show cause Justice Howard made an order sustaining the decision of the secretary of state and overruling the objections of McEwan, bearing date the 21st day of October, which order was produced before Justice Betts on the following day when the order to show cause procured by McEwan was returnable before him, and thereupon he denied the motion to review the determination of the secretary of state " solely on the ground that there has been a decision by a justice of this court on said determination of the secretary of state on the complaint of James O'Neil."

The Democratic party has been known and recognized as one of the great political parties of the country for upwards of seventy-five years, and during that time it has annually made nominations for such offices as were to be filled by the electors. On the 29th day of September, 1904, it had caused a certificate of nomination for presidential electors, governor and other state officers to be filed in the office of the secretary of state, to be voted for at the next November election, and the objector to the certificate filed by the Social Democratic party, so called, alleges that such name will deceive Democratic and independent voters, and cause many of them to believe that in voting for the candidates of the Social Democratic party, so called, they will be voting for the regular candidates of the Democratic party. In the month of June, 1897, a national party of Socialists was organized at a convention held in the city of Chicago, which assumed the name of "Social Democracy of America." At another convention held in June, 1898, in Chicago, the name was changed to "Social Democratic Party of America." In the summer of 1900 the Social Democratic party of America and several other socialistic organizations of the United States, among them a large faction of the then existing Socialist Labor party, united into one party under the name "Social Democratic Party," and as such made nominations in the state of New York for presidential electors, governor and other state officers to be voted for at the following November election. Such nominations were made pursuant to the provisions of section 57 of the Election Law, by procuring a requisite number of signers to the certificate of nomination, which was filed in the office of the secretary of state on the 29th day of September, 1900. This latter name appears to have been retained by the party in the state of New York until May, 1904, at which time the "Socialist Party of the United States," of which the New York organization was an integral part, met in convention in the city of Chicago and made nominations for president and vice-president, to be supported at the ensuing election of that year. At that convention the name of

" The Socialist Party " was adopted, as appears from the plat-
form, or resolutions, adopted by it. We thus have the organi-
zation in this state incorporating in its name the word " Demo-
cratic," while the organization as it exists in the United States,
as represented by its national convention, is known simply as
" The Socialist Party."

Inasmuch as the election of 1904 has passed, the questions
involved in these proceedings have become academic. But
in view of their public importance and their liability to arise
again upon the filing of certificates of nominations for other
elections, we have thought best to entertain the appeal and to
consider the questions. The first question pertains to the
practice adopted by the justice before whom the proceedings
were reviewed. Upon this subject the statute is exceedingly
meager. While the draftsman thereof may be an expert
practitioner, we are unable to escape the conviction that the
simple remedy of review by certiorari would have been more
easily understood by the bench and bar. It provides that,
" If there be a division within a party, and two or more fac-
tions claim the same, or substantially the same device or name,
the officer aforesaid shall decide between such conflicting
claims, giving preference of device and name to the conven-
tion or primary, or committee thereof, recognized by the regu-
larly constituted party authorities. Any question arising with
reference to any device, or to the political party or other name
designated in any certificate of nomination filed pursuant to
the provisions of this section, or of section 57 of this article,
or with reference to the construction, validity or legality of
any such certificate, shall be determined in the first instance
by the officer with whom such certificate of nomination is
filed. Such decision shall be in writing, and a copy thereof
shall be sent forthwith by mail by such officer to the com-
mittee, if any, named upon the face of such certificate and
also to each candidate nominated by any certificate, and also
to each candidate nominated by any certificate of nomi-
nation affected by such decision. The supreme court, or any
justice thereof, within the judicial district, or any county

judge within his county, shall have summary jurisdiction upon complaint of any citizen, to review the determination and acts of such officer, and to make such order in the premises as justice may require, but the final order must be made on or before the last day fixed for filing certificates of nomination to fill vacancies with such officer as provided in subdivision one of section sixty-six of this article. Such a complaint shall be heard upon such notice to such officer as the said court or justice or judge thereof shall direct." (Laws of 1896, chapter 909, section 56, as amended by Laws of 1898, chapter 335, and Laws of 1901, chapter 654, known as the Election Law.)

By other provisions of the statute the certificate of nominations, for presidential electors, governor and other state officers, is required to be filed with the secretary of state. That officer was, therefore, required to determine in the first instance any question arising with reference to any party name designated in any certificate of nomination. The proceeding authorized by the statute is, under the provisions of the Code of Civil Procedure, a special proceeding. In order to institute such proceeding before the secretary of state a question must arise calling for his determination, and such question arises only by some objection filed with him raising a question with reference to the validity of the certificate. In the case under consideration the objection was filed by McEwan, and that act we must regard as a commencement of the special proceeding. Upon the hearing that followed, the secretary of state, as we have seen, overruled the objection and held the certificate valid. Then under the provisions of the statute a right of review was given by the Supreme Court or any justice thereof within the judicial district or by any county judge upon the complaint of *any citizen*. It is quite possible that the word "citizen" should be limited to that of a qualified elector residing within the state or county or district for which the officer was to be chosen, and that the same qualifications were intended to relate also to the person filing the objection. But McEwan, as we have seen, was both

a citizen and an elector.  He was the person who instituted the proceeding, and also the person who had the right to review an adverse determination of the question by the secretary of state.  Under the provision of the statute it is claimed a review may be had upon the complaint of *any citizen*, but this must be understood as referring to any citizen who had instituted the proceeding by filing objections with the secretary of state.  To hold otherwise would practically nullify the statute.  For if a person instituting the proceedings can be shut out of the right to review an adverse decision by a stranger who had not filed any objection to the certificate, and who interposed by motion before another court or judge at an earlier date without notice to the person instituting the proceedings, then the decision of an officer with whom the certificate of nomination was required to be filed, may, by the consent of the moving party, be sustained, and the beneficial purposes of the statute evaded and annulled.  It is said that the provisions of the statute may be evaded by a person who is friendly to the party filing the certificate by his making objections thereto, and then by failure to present valid reasons to the officer procure a decision overruling his objection and thus deprive the representatives of other parties who may wish to file objections and review the proceedings of their right to do so.  But no such attempt to evade the statute has thus far been brought to our attention.  Any citizen and elector may doubtless file objections before the officer with whom the certificate is filed, who may doubtless consolidate them and hear all of the objections together and make his determination thereon ; and if any question arises as to the collusion of any persons or parties, the courts will doubtless find a way to dispose of their proceedings when the question arises.  It is sufficient to now state that the review instituted by O'Neil before Justice HOWARD was without authority, and that justice acquired no jurisdiction to review the proceeding. The proceeding, as we have seen, was then pending before Justice BETTS, regularly instituted by the person who had interposed the objection to the certificate.  Justice BETTS had

thereby · acquired jurisdiction, and it became his duty to determine the matter upon the merits.

Section 56 of the Election Law, to which we have already referred, contains provisions for party nominations of candidates for public office, to be made by a convention or a duly authorized committee of such convention of a political party which at the last preceding general election at which a governor was elected had cast ten thousand votes or upwards. It contains provisions for the making· of party certificates of nominations, of filing the same with the secretary of state, and provides that it shall also designate, in not more than five words, the name of the political party which the convention or committee making the nomination represents; and they also shall select some simple device or emblem to distinguish or designate the candidates of the party, which device shall in no case be used by any other party or independent body. If the certificate of nomination of two or more different political parties or independent bodies shall designate the same, or substantially the same, device or emblem *or party name*, the officer with whom the certificates of nomination are filed shall decide which of said political parties or independent bodies is entitled to the use of such device or emblem *or party name*, being governed so far as may be in his decision by priority of designation in the case of the device or emblem, *and of use in the case of party name.* Then follow provisions with reference to the review of the determination of the secretary of state, to which we have already alluded. Section 57 of the law contains provisions for the making of independent nominations of candidates for public office for the state, upon the subscribing of the certificate provided for by six thousand or more voters, which certificate must designate in not more than five words the political party or other name which the signers shall select, "which name shall not include the name of any organized political party." They also are required to select an emblem. It will thus be observed that the provisions of section 56 pertain to nominations by the conventions of existing political

parties or by committees duly chosen by such conventions, and that the provisions of section 57 pertain to the making of independent nominations based upon the requisite number of signatures of voters. Under the former section the political party is prohibited from selecting "the same or substantially the same name" that has been previously adopted by another political party, while under the provisions of the latter section in making an independent nomination, the statute absolutely prohibits the selecting of a name which will include the name of any existing organized political party. The provisions of this statute we had under consideration in *Matter of Greene* (150 N. Y. 566). In that case the question arose over a certificate of nomination filed in the name of the "National Democratic Party." The Appellate Division held that the name chosen was not substantially the same as that of the Democratic party. The case was argued before us and had to be decided the next day, in order to be within the time required by the statute. We affirmed the determination of the Appellate Division, but without opinion and without adopting the opinion below. In that case the name had been adopted by a national convention which had named candidates for president and vice-president of the United States. In this state presidential electors had been nominated under the same name. While conceding for the purpose of the case that the legislature had the power to compel a change of the name of a political organization in a presidential election, we entertained the view that it was not intended so to do in such an election, that the common speech of the people, the speeches made during the campaign, the discussions in the newspapers, the banners, signs and transparencies would serve to so completely identify the party name with the persons nominated for president and vice-president as to leave little chance for deception. The party in this state but adopted the name by which the party was known and designated throughout the United States, and the nominations for local candidates would follow those named for presidential electors upon the official ballot in the same column. In that case we were not pre-

pared to hold that the name was invalid which was recognized as valid in every other state in the Union. Had the certificate of nomination been confined to state and local offices, we might have found that the name was so nearly the same as that of the older party that it was liable to deceive, and consequently might have reached a different result.

In the case before us, as we have seen, the name "Social Democratic Party" was adopted in national convention in the city of Chicago in 1900, at which the nominations for president and vice-president were made. But at the national convention of the same party in 1904 the word "Democratic" was eliminated from the name of the party and the nomination was made under the name "The Socialist Party." The local branch of the party in this state, however, refused to adopt the name by which the party was known throughout the United States and which had been adopted by its national convention and insisted on making its nomination under the name "The Social Democratic Party." The political speeches and discussions in the press, with the banners, signs and transparencies which might be made and displayed throughout the campaign on behalf of the Socialist party would not serve to identify the Social Democratic party with the candidates for president and vice-president among the illiterate voters with the same force and effect as if the national party and the local party maintained the same name. The reasons, therefore, for our decision of the case in *Matter of Greene (supra)* do not apply to this case. In 1900 the Socialist party in this state made its nominations pursuant to the provisions of section 57 of the Election Law. By that statute it was prohibited from including in its name the name of the Democratic party. Had it made its nominations in 1904 under the provisions of that section, clearly the name adopted would have been unauthorized. It, however, made its nominations in that year under section 56, which prohibited it from adopting a name substantially the same as that of the Democratic party. It added thereto the word "Social" only, and in view of the purpose and intent of the statute and in the absence of a national

party maintaining that name, we think it should be held that the name used was unauthorized and that it should be amended by conforming it to that of the national party, of which the local party is a branch.

The order and determination should, therefore, be reversed and the objection interposed by the appellant should be sustained, with costs in all courts.

Cullen, Ch. J., Gray, O'Brien, Bartlett and Werner, JJ., concur; Vann, J., not voting.

Order reversed, etc.